## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Donna Saxe, Executor of the Estate
of Ronald Saxe, Deceased, *et al.*,

      Plaintiffs,

-V-                                                                Case No. 2:03-CV-00018
                                     JUDGE SMITH
                                     Magistrate Judge Kemp

Thomas P. Dlusky,

      Defendant.


### OPINION AND ORDER

      Plaintiff initiated this action on January 3, 2003, asserting claims under Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, as well as state law.  Plaintiff asserts, *inter alia*, that Defendant violated his fiduciary duty to Plaintiff and breached a Partnership Agreement when he applied the proceeds of a life insurance policy to fulfill the Agreement's buyout after death provision.  Plaintiff also contends that Defendant violated his fiduciary duty to plaintiff when he purchased stock from her and later sold it for a higher price.  The parties filed cross-motions for summary judgment and the Court granted Defendant's Motion in an Order dated September 16, 2004, dismissing Plaintiffs' federal claims with prejudice and the state law claims

without prejudice.  On October 13, 2004, Plaintiff filed a Notice of Appeal.  On January 6, 2006, the Court of Appeals for the Sixth Circuit reversed this Court's grant of summary judgment to Defendant as to Plaintiff's claim under Section 10 of the Securities and Exchange Act of 1934.  Plaintiff did not appeal the dismissal without prejudice of her state law claims, but instead filed those claims in the Franklin County Court of Common Pleas, case no. 04CVH-10-10919.  The state court case is stayed by agreement of the parties pending the outcome of the case before this Court.

Pursuant to this Court's Order, the arguments were re-briefed in the context of Defendant's Motion for Summary Judgment and the response and reply.  Defendant's Motion is now ripe for review.  For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment (Doc. 27).

## I.  Facts

Plaintiff Donna Saxe is both the widow of decedent CPA Ronald Saxe and the Executor of his estate.  Plaintiff initiated this suit in both capacities.  For the sake of clarity, the Court will refer to her dual capacities using the singular "Plaintiff."

Defendant Thomas P. Dlusky was a partner with Ronald Saxe in the Pritchett, Dlusky & Saxe accounting firm ("PDS Accounting").  Dlusky, along with Ronald Saxe, also owned a twenty-five percent interest in PDS Planning, Inc. ("PDS Planning"), a closely held financial planning firm.  Robert Hamilton owned the remaining fifty percent of PDS Planning.

Ronald Saxe died on December 29, 1997.  In June 1998, Defendant approached Plaintiff about purchasing the Saxe's twenty-five percent interest in PDS Planning.  Defendant told Plaintiff that he believed the twenty-five percent interest was worth $30,000, based upon a "rule of thumb" valuation of four and one-half times the previous year's profits.  Plaintiff's son, Douglas Saxe, assisted her in connection with the transaction. At the time, Douglas Saxe was an accountant and partner in PDS Accounting.  Douglas Saxe was familiar with PDS Planning and prepared tax returns for PDS Planning after his father's death through 2001.

In June 1998, Plaintiff agreed to the $30,000 price and the agreement was later reduced to writing by Plaintiff's estate attorney.  Plaintiff did not attempt to have the shares in PDS Planning appraised.  In fact, Plaintiff filed papers in the Probate Court waiving her right to an appraisal.  Defendant paid Plaintiff

the $30,000 by November 1999.

Sometime in the late summer of 2000, Hamilton, the President and fifty percent shareholder in PDS Planning, approached Defendant and offered him $250,000 for his fifty percent interest in PDS Planning.  For business reasons the documents consummating the sale to Hamilton were backdated to January 2000.

On January 3, 2003, Plaintiff initiated this case asserting claims for violation of Rule 10b-5 of the Securities and Exchange Act of 1934, breach of fiduciary duties and breach of contract.  As mentioned above, Plaintiff's state law claims are now pending in state court and the only claim for this Court to decide in Defendant's Motion for Summary Judgment is the claim under the Securities and Exchange Act of 1934.

## II.  Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable

4

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, *and Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search

the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.  Discussion

### A.  10b-5 claim

Despite Plaintiff's arguments to the Sixth Circuit that she would have worked harder to develop the evidentiary record to defeat summary judgment being entered against her, she has failed to present any new evidence on the key issue in this case: material misrepresentation.

In support of her 10b-5 claim, Plaintiff alleges the same arguments discussed by this Court in the previous ruling awarding summary judgment *sua sponte* to Defendant.  Plaintiff asserts that Defendant Dlusky was an insider in a closely held corporation, and he failed to disclose financial information and failed to disclose a later sale of the interest to the remaining shareholder.  Plaintiff argues that Defendant financially profited in his dealings with her.  Plaintiff also asserts that Defendant made the following affirmative misrepresentations: (1) the value

of the decedent's interest in PDS Planning was $30,000; (2) PDS Planning "never made much money"; and (3) plaintiff lacked the professional credentials to be involved with the company.

Defendant argues that he is entitled to summary judgment in his favor with respect to Plaintiff's claim for violation of § 10(b) Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendant first contends that Plaintiff cannot show that Defendant made use of an instrumentality of interstate commerce or the mails in connection with the purchase of Plaintiff's twenty-five percent interest in PDS Planning. Furthermore, Defendant ostensibly argues that he did not make any material misrepresentations or omissions in connection with the transactions.

Rule 10b-5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or

8

would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To prevail on a claim of securities fraud under §10(b) and Rule 10b-5, a plaintiff must establish the following elements: (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury. *See Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1409 (6th Cir.1991).

The standard for determining materiality is set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  *Basic* involved a company's denials of preliminary merger negotiations, which were in fact on-going.  The Sixth Circuit Court of Appeals reversed summary judgment for the defendant company, holding "once a statement is made denying the existence of any discussions, even discussions that might not have been made material in absence of the denial are material because they make the statement made untrue." *Levinson v. Basic Inc.*, 786 F.2d 741, 749 (6th Cir.1986).  On appeal, the Supreme Court rejected this standard of materiality, as well as the Third Circuit's "agreement-in-principle" test, which required agreement as to price and the structure of the transaction in order for merger discussions to be material.

The Court in *Basic* adopted the materiality standard

9

announced in the context of proxy-solicitation in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976): "'An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *Basic*, 485 U.S. at 231 (*quoting TSC Industries*, 426 U.S. at 449). Stated otherwise, for an omitted fact to be deemed material, there must be a substantial likelihood that its disclosure would have been viewed by the reasonable investor as having significantly altered the "total mix" of information. *Id.* Materiality depends upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event to the issuer of the securities. *Id.* at 238.

As a preliminary matter, Plaintiff argues that "it is implicit within the appellate court's decision that this case involved more than just a remand to the trial court – as to procedural matters." (Pl's Memo. in Opp. At 2). However, the Court has reviewed the Sixth Circuit decision, No. 04-4269, and the basis for remand was the granting of summary judgment to Defendant *sua sponte*. The Sixth Circuit was concerned that Plaintiff was not on notice to present all her evidence to determine if summary judgment was appropriate. Plaintiff has now had adequate notice to present all evidence to counter Defendant's Motion for

10

Summary Judgment.

As to Defendant's first argument which was discussed in the previous briefing, Plaintiff avers that Defendant used the telephone once and the mail twice in connection with the transaction.  The Court finds that Plaintiff has adduced evidence to establish that Defendant used an instrumentality of interstate commerce or the mail with respect to the PDS Plaining transaction. *See Wright v. Downs*, No. 91-2050, 1992 WL 168104, at * 4 (6th Cir. July 17, 1992).  The Court will proceed to examine whether Defendant made any material misrepresentations or omissions.

The first alleged material omission is Defendant's representation in June 1998 that the value of the twenty-five percent share of PDS Planning was $30,000.  The only evidence Plaintiff has presented to the Court is her affidavit.  Plaintiff's only argument that the value was higher is that Defendant sold the resulting fifty percent interest in PDS Planning to the remaining shareholder for $250,000 sometime in the late summer of 2000.  Defendant avers that he calculated the value of the twenty-five percent interest using a "rule of thumb," namely, four and one-half times PDS Planning's accrued profit for the year preceding the sale.  Plaintiff does not challenge this

11

assertion or attempt to show that Defendant's "rule of thumb" was either unreasonable or inaccurately calculated.

The uncontradicted affidavit testimony establishes that the price for Plaintiff's interest was agreed upon in June 1998. It is further agreed that the purchase price of Defendant's interest in the sale to Hamilton was agreed upon in July 2000. More than two years had passed between the two transactions. It would be completely unreasonable to prohibit Defendant from making a profit on his interest after two years. **The Court finds as a matter of law that the mere fact that Defendant later sold the fifty percent interest in PDS Planning to the remaining shareholder for $250,000, without more, does not support an inference that Defendant misrepresented the value of decedent's twenty-five percent share.**

**The next alleged misrepresentation was that Defendant told Plaintiff that PDS Planning never made much money. Plaintiff again relies on her own affidavit as evidence and asserts that the statement was materially false because Defendant was receiving approximately $70,000 annually in consulting fees from PDS Planning. The Court finds as a matter of law that such a vague, subjective statement cannot be material. Furthermore, Plaintiff has not introduced any substantial and/or admissible evidence that the statement was false.**

**Some other general misrepresentations that Plaintiff claim**

12

Defendant made are: that Plaintiff lacked the professional credentials to be involved in PDS Planning; Defendant led Plaintiff to believe that she could rely on him and he would be fair and act in her best interests; and that Defendant failed to inform Plaintiff of the prospect of the sale to the third shareholder. Plaintiff, however, fails to provide any evidence that the alleged misrepresentations were either false or material.

The Court does not find that there is anything wrong with a shareholder opining that a person with no experience in financial matters lacks the appropriate credentials to become involved in a financial planning venture. Further, Plaintiff fails to establish how such an alleged misrepresentation impacted her sale of the estate's 25% interest.

Plaintiff also argues that Defendant promised to look out for her best interests, but she feels he failed to do so, and instead acted in his own self-interest. Plaintiff correctly cites to caselaw regarding obligations of shareholders and fiduciaries of closely held corporations, however, she has failed to provide any evidence that Defendant did not act in accordance with his shareholder and fiduciary obligations. There is evidence of two separate transactions, between Plaintiff and Defendant and Defendant and Hamilton. However, there is no evidence that

13

Defendant knew of the potential sale to Hamilton at the time of the purchase of Plaintiff's shares and therefore no evidence that he was required to disclose any information.

Further, Plaintiff cites no authority for the proposition that Rule 10b-5 imposes an affirmative duty on the part of a minority shareholder in a closely held corporation to disclose financial information before purchasing the stock of another minority shareholder, and the Court is not aware of any such authority. Moreover, Plaintiff does not identify any specific material financial information that was obtained through discovery which Defendant did not disclose to Plaintiff.

Lastly, Plaintiff argues that Defendant failed to disclose to Plaintiff the sale to the remaining shareholder (Hamilton), or that he made a substantial profit.  The evidence in the record, however, indicates that the remaining shareholder did not approach Defendant about purchasing Defendant's resulting fifty percent interest in PDS Planning until well after Plaintiff and Defendant had completed the transaction for the purchase of decedent's twenty-five percent interest.  Hence, at the time of Defendant's transaction with Plaintiff, there was no material information about a transaction with Hamilton to disclose.

For the above reasons, the Court holds as a matter of law that Plaintiff has failed to establish that Defendant made any

14

material misrepresentations or omissions in connection with his purchase of the twenty-five percent share in PDS Planning. Defendant is therefore entitled to summary judgment with respect to Plaintiff's claim under Rule 10b-5.

### IV.  Disposition

Based on the above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 27).

The Clerk shall enter final judgment in favor of Defendant and against Plaintiff.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 27 from the Court's pending motions list.


**IT IS SO ORDERED.**

 /s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**